IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRANDY HAYES | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Civil Action No. 4:24-cv-816 |
| | § |
| CHARLES SCHWAB & CO., INC. | § |
| | § |
| Defendant. | § |

## COMPLAINT AND JURY DEMAND

Plaintiff Brandy Hayes files this *Complaint and Jury Demand* against her former employer, Defendants Charles Schwab & Co., Inc., and demands a trial by jury. In support of her claims, Plaintiff states the following:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an individual residing in Desoto, Texas.

2. Charles Schwab & Co, Inc. ("Charles Schwab" or "Defendant") is a foreign for-profit corporation with corporate offices in Denton County at 3000 Schwab Way, Westlake, TX 76262.

3. Defendant has been served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

4. This Court has Federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on Plaintiff's federal claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq ("FMLA"), the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e,

et. seq., and the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg, et. seq. This Court also has supplemental jurisdiction over Plaintiff's THCRA claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper as the events giving rise to this Complaint occurred in Denton County in the Eastern District of Texas, Dallas Division.

## II. FACTS

6. Plaintiff Brandy Hayes began working for Charles Schwab & Co., Inc. on August 8, 2022.

7. In February 2023, Ms. Hayes began reporting to a new supervisor John Bergeron in a new role as an Associate Advisor.

8. During her first meeting with Mr. Bergeron, Ms. Hayes informed Mr. Bergeron that she was pregnant, that her pregnancy was high-risk, and that she would need to go to the doctor more often than with a normal pregnancy.

9. After Ms. Hayes' notified Mr. Bergeron about her high risk pregnancy, Mr. Bergeron began to single Ms. Hayes out for criticism even though Ms. Hayes' call metrics were as good or better than other members of my team.

10. On March 15, 2023, Ms. Hayes submitted a doctor's note to Charles Schwab confirming her diagnosis of hyperemesis gravidarum and need to work from home through April 17, 2023.

11. Ms. Hayes' job required her to be available for calls and the doctor's note confirmed Ms. Hayes was throwing up frequently.

12. No one from Human Resources had any discussion with Ms. Hayes about accommodating her need to take breaks to throw up.

13. Human Resources did not approve any formal accommodation allowing Ms. Hayes to take breaks for her hyperemesis gravidarum.

14. Ms. Hayes did discuss her need to take breaks to throw up with Mr. Bergeron.

15. Mr. Bergeron initially said that Ms. Hayes could ping him when she needed to take a break to throw up.

16. However, Mr. Bergeron then counted time Ms. Hayes spent away from her desk on these breaks against Ms. Hayes' call metrics.

17. On March 23rd and April 4th, Mr. Bergeron met with Ms. Hayes to discuss her job performance.

18. Mr. Bergeron criticized Ms. Hayes for taking too many breaks to throw up in performance discussions with her.

19. There were times Ms. Hayes needed to take a break due to her hyperemesis gravidarum but did not take the breaks because she knew the more breaks she took the more trouble she would get into with Mr. Bergeron and with her call metrics.

20. On April 7, 2023, Mr. Bergeron issued Ms. Hayes a written Coaching Memo.

21. The written Coaching Memo was not warranted based on Ms. Hayes' performance as compared to others on her team.

22. On or about April 17, 2023, Ms. Hayes met with Human Resources to discuss a report of pregnancy discrimination that she had filed against Mr. Bergeron through Charles Schwab's online portal.

23. Human Resources dismissed Ms. Hayes' concerns and offered no help or resolution.

24. Shortly thereafter, Ms. Hayes ended up needing to take a short-term disability leave for the hyperemesis gravidarum until June 26, 2023.

25. Within a month of Ms. Hayes' return to work from her pregnancy-related disability leave, Mr. Bergeron met with Ms. Hayes again to criticize her work performance.

26. On July 13, 2023, Mr. Bergeron in fact placed Ms. Hayes on a Written Warning for her work performance.

27. The issuance of this Written Warning made Ms. Hayes ineligible for quarterly bonus advance, promotion, job transfer, sabbatical, awards, and any other company programs that required her to be in good standing with the company for a period of 6 full months.

28. Mr. Bergeron thereafter continued to criticize Ms. Hayes' work performance multiple times in August of 2023.

29. Following her return from her pregnancy-related disability leave, Ms. Hayes' call metrics met or exceeded the metrics hit by other teammates.

30. Mr. Bergeron's excessive and repeated criticism of Ms. Hayes' work performance was not warranted.

31. Mr. Bergeron's issuance of the Written Warning to Ms. Hayes was not warranted.

32. Ms. Hayes took another leave for the high risk pregnancy from September 14, 2023 through February 12, 2024.

33. This second leave was protected under the Family Medical Leave Act (FMLA) because as of September 14, 2023 Ms. Hayes had been employed by Charles Schwab for over a year.

34. On the day Ms. Hayes went out for her protected FMLA leave, Mr. Bergeron told her that when she returned there they would have to discuss whether or not Ms. Hayes would continue to work for the company.

35. On February 12, 2024, the very day Ms. Hayes returned from leave, Ms. Hayes was immediately fired based on Mr. Bergeron's prior critiques of her performance.

36. Ms. Hayes' work performance was at all times comparable to other members of her team.

37. Other members of the team, however, were not written up or fired.

38. None of the other members of the team had a high risk pregnancy.

39. None of the other members of the team requested or needed pregnancy-related accommodations.

40. None of the other members of the team made an internal report of pregnancy discrimination.

41. And none of the other members of the team took multiple pregnancy-related or FMLA leaves of absence.

42. On February 28, 2024, Ms. Hayes filed an EEOC Charge of Discrimination against Charles Schwab with the Dallas EEOC Office and the Texas Workforce Commission Civil Rights Division.

43. On August 26, 2024, the EEOC issued Ms. Hayes' a right-to-sue notice allowing her to file her Federal discrimination claims in court.

44. Ms. Hayes timely files this Original Complaint and Jury Demand against Charles Schwab within 90 days of the EEOC's issuance of her right-to-sue notice.

# III. CAUSES OF ACTION

## FIRST CAUSE OF ACTION:
## FMLA DISCRIMINATION/RETALIATION

45. Plaintiff incorporates the preceding paragraphs of the Complaint into this cause of action.

46. Defendant was an employer subject to the requirements of the FMLA under 29 U.S.C. § 2611(4).

47. Plaintiff was an "eligible employee" under 29 U.S.C. § 2611(2) at the time she took her FMLA-protected leave on September 14, 2023.

48. In the year prior to Plaintiff's September 14, 2023 leave, Plaintiff had worked for Defendant for more than one year and for more than 1,250 hours in her preceding year of employment.

49. Plaintiff was eligible to take both FMLA leave for the serious medical conditions related to her high-risk pregnancy and for the birth of her child.

50. Defendant's third-party administrator Sedgwick did in fact approve Plaintiff to take an FMLA-protected leave of absence beginning on September 14, 2023.

51. Defendant, however, discriminated and retaliated against Plaintiff in violation of 29 U.S.C. §2615(a)(2) by terminating Plaintiff for exercising her right to take FMLA leave for her own serious medical condition and for the birth of her child.

52. Defendant's willfully and intentionally terminated Plaintiff in retaliation for Plaintiff's exercise of her FMLA rights.

53. Plaintiff respectfully asks the Court and the jury to award her compensation for her actual economic damages, including back and front pay, her attorney's fees, her court costs, prejudgment interest, and liquidated damages on account of the intentional and reckless nature of Defendant's conduct.

## SECOND CAUSE OF ACTION:

## PREGNANCY DISCRIMINATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT OF 1978 AND TCHRA

54. Plaintiff incorporates the preceding paragraphs of the Complaint into this cause of action.

55. Defendant is an "employer" as defined by the Pregnancy Discrimination Act of 1978 (as incorporated into Title VII) and Chapter 21 of the Texas Labor Code (TCHRA).

56. Plaintiff was Defendant's "employee" as defined by the Pregnancy Discrimination Act of 1978 and the TCHRA.

57. The Pregnancy Discrimination Act of 1978 and the TCHRA prohibit employers from discrimination against employees on the basis of "pregnancy, childbirth, and related medical conditions."

58. Plaintiff informed Defendant of her pregnancy.

59. Plaintiff also informed Defendant of the high-risk nature of her pregnancy.

60. Plaintiff also informed Defendant of her diagnosis with a pregnancy-related medical condition hyperemesis gravidarum.

61. Defendant only started issuing Plaintiff performance counseling to Plaintiff after Plaintiff disclosed her pregnancy to Defendant.

62. Defendant also penalized Plaintiff for having hyperemesis gravidarum.

63. Defendant issued Plaintiff performance counseling and a Written Warning not because they were warranted but because of Plaintiff's pregnancy.

64. Defendant then fired Plaintiff because of Plaintiff's pregnancy and related medical conditions.

65. In writing Plaintiff up and terminating Plaintiff's employment, Defendants discriminated against Plaintiff because of her pregnancy and related medical conditions.

66. As a result of Defendants' discriminatory actions, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which can be estimated for the purpose of bringing this lawsuit. In addition, Plaintiff has suffered, and will continue to suffer, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

67. Defendant's violation of Plaintiff's rights was not a mistake, but rather intentional and willful, justifying an award of punitive damages against Defendant.

68. As a result of these willful/intentional violations of the Pregnancy Discrimination Act of 1978 and the TCHRA, Plaintiff requests that she be awarded all damages against Defendants, to which she is entitled, including, but not limited to, lost back and future wages and salary, incentives, and employee benefits, compensatory and punitive damages, plus interest. Plaintiff also requests any additional equitable relief to which she is entitled.

69. Plaintiff also requests reasonable attorney's fees and court costs.

## FOURTH CAUSE OF ACTION:

## RETALIATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT OF 1978 AND TCHRA

70. Plaintiff incorporates the allegations contained in the preceding paragraphs and incorporates by reference.

71. The Pregnancy Discrimination Act of 1978 makes it illegal for an employer to retaliate against an employee for reporting pregnancy discrimination or requesting pregnancy-related accommodations.

72. The TCHRA makes it illegal for employer to retaliate against an employee for reporting pregnancy discrimination

73. Defendant escalated its disciplinary action against Plaintiff and fired her after she made an internal report of pregnancy discrimination.

74. After Plaintiff made her internal report of pregnancy discrimination, Defendant issued a Written Warning to Plaintiff that adversely affected Plaintiff's good standing with the company and her eligibility for quarterly bonuses and other benefits of her employment.

75. Defendant escalated its disciplinary action against Plaintiff and fired her after she requested reasonable accommodations for her pregnancy.

76. After Plaintiff requested and used reasonable accommodations for her pregnancy, Defendant issued a Written Warning to Plaintiff that adversely affected Plaintiff's good standing with the company and her eligibility for quarterly bonuses and other benefits of her employment.

77. Defendant would not have fired Plaintiff but for her internal complaint of pregnancy discrimination.

78. Defendant would not have fired Plaintiff but for her request for and use of

pregnancy-related accommodations.

79. Defendant violated the Pregnancy Discrimination Act of 1978 and the TCHRA when it fired Plaintiff in retaliation for her making an internal report of pregnancy discrimination.

80. Defendant violated the TCHRA when it fired Plaintiff in retaliating for requesting and using accommodations for her pregnancy.

81. As a result of Defendants' discriminatory actions, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which can be estimated for the purpose of bringing this lawsuit. In addition, Plaintiff has suffered, and will continue to suffer, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

82. Defendant's violation of Plaintiff's rights was not a mistake, but rather intentional and willful, justifying an award of punitive damages against Defendant.

83. As a result of these willful/intentional violations of the Pregnancy Discrimination Act of 1978 and the TCHRA, Plaintiff requests that she be awarded all damages against Defendants, to which she is entitled, including, but not limited to, lost back and future wages and salary, incentives, and employee benefits, compensatory and punitive damages, plus interest. Plaintiff also requests any additional equitable relief to which she is entitled.

84. Plaintiff also requests reasonable attorney's fees and court costs.

# FIFTH CAUSE OF ACTION – 
## VIOLATIONS OF THE PREGNANT WORKERS FAIRNESS ACT

85. Plaintiff incorporates the allegations contained in the preceding paragraphs and incorporates by reference.

86. Defendant violated the Pregnant Worker Fairness Act by failing to make reasonable accommodations for the known limitations of Plaintiff's pregnancy.

87. Defendant knew Plaintiff was throwing up frequently due to hyperemesis gravidarum.

88. Defendant failed to approve Plaintiff to take penalty-free breaks to accommodate her need to step away from her desk to use the restroom to throw up.

89. Defendant in fact did penalize Plaintiff for those breaks Plaintiff did take to throw up by counting them against her call metrics and against their evaluations of her performance.

90. Defendant violated the Pregnant Worker Fairness Act by failing to engage in an interactive process with Plaintiff about the accommodations she needed.

91. Defendant violated the Pregnant Worker Fairness Act by requiring Plaintiff to accept an unreasonable accommodation (i.e. breaks that counted against her call metrics and performance and subjected her to discipline) that was not arrived at through the interactive process.

92. Defendant further violated the Pregnant Worker Fairness Act by taking adverse actions against Plaintiff in the form of performance counseling, write-ups, and termination because of the accommodations she requested and used for the known limitations

related to pregnancy, childbirth, and related medical conditions.

93. As a result of Defendants' discriminatory actions, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which can be estimated for the purpose of bringing this lawsuit. In addition, Plaintiff has suffered, and will continue to suffer, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

94. Defendant's violation of Plaintiff's rights was not a mistake, but rather intentional and willful, justifying an award of punitive damages against Defendant.

95. As a result of these willful/intentional violations of the Pregnant Workers Fairness Act, Plaintiff requests that she be awarded all damages against Defendants, to which she is entitled, including, but not limited to, lost back and future wages and salary, incentives, and employee benefits, compensatory and punitive damages, plus interest. Plaintiff also requests any additional equitable relief to which she is entitled.

96. Plaintiff also requests reasonable attorney's fees and court costs.

## V. JURY DEMAND

Plaintiff requests a trial by jury on all of her causes of action.

Date: September 9, 2024

Respectfully submitted,

**TREMAIN ARTAZA PLLC**

/s/ *Christine A. Hopkins*
Christine A. Hopkins
Texas State Bar No. 24095768
christine@tremainartaza.com
4925 Greenville Ave, Ste 200
Dallas, TX 75206

Direct: (469) 573-0297
Fax: (214) 254-4941

**COUNSEL FOR PLAINTIFF**